Good morning, Your Honor. My name is Cesar Luna. I am appearing on behalf of Mr. Moreno-Morante. If I can reserve two minutes for rebuttal, I can. Certainly. There is a preliminary question. Adoption proceedings were underway when this whole thing started. Have they been completed? No, Your Honor. The petitioner, as a good parent, chose not to proceed forward with the adoption process because he felt that at some point his daughter would rehabilitate and would take back the children. The fact of the matter is that that has never happened and it's most likely not going to happen. So currently what the petitioner, Mr. Moreno, has is the permanent legal custody of all five children. Can you answer the question we had in the last case, whether citizenship is a requirement for adoption? I can't. But in this particular case, I am aware that they were pursuing it and I was not aware that unlawful status was a bar to it. In fact, in this particular case, permanent legal custody was granted to a non-resident, non-legal resident. By the courts? By California courts, yes. All right. Go ahead. Well, the main issue in this case, Your Honors, is simply whether the relationship of five U.S. citizen children under the legal permanent custody of their grandparent falls within the definition of a child. And basically what the government is requesting this Court is to ignore the notion, the legal notion in the State of California of what legal permanent custody is. And I would submit to the Court that legal permanent custody or guardianship under California is basically the same as a natural parent's rights or an adopted parent's rights. A guardian has the responsibility to provide for the children. They have the responsibility to care for them, to provide an education. Essentially for these purposes is virtually the same responsibilities that carry natural parents and adopted parents. When were your clients served with an order to show cause? I don't have the precise date, Your Honor. I believe it was in 2003. Well, can you answer this question? When they first sought legal custody and or adoption, was that before or after they were served? That was much before. Okay. That was before. How long? At least a few years before. Okay. So here it's not just merely a functional equivalent of the child-parent relationship. We submit that it's actually a legal equivalent that falls within the bounds of Section 101B1. I'm sorry. Yes, 101B1 of the definition in the Immigration and Nationality Act. Now do you think that includes a foster parent also? Perhaps. Or is a foster parent the equivalent of a guardian in California? Perhaps. Perhaps. Because, again, the State of California made Mr. Moreno responsible for these children. And just as a natural parent and just as an adopted parent, he bears the same responsibilities as a parent would. Now when we talk about Section 101F and we take it in the context of cancellation of removal, we can see that at least those two statutes taken into context, at least they're very persuasive in this particular instance to argue that orphan children, such as the ones at this case, also taking into account the fact that cancellation of removal is a remedy available for non-residents, but really to protect the interest and the welfare of U.S. citizen children and relatives of those non-citizens. It just makes sense that the definition of 101 subsection F would take part in as an orphan. In other words, simple notions of justice and common sense would dictate that this particular statute just simply didn't contemplate what would be a legal guardianship in this case. And for those reasons, it's ambiguous. And the Court does have the jurisdiction and authority to interpret that particular whole in this particular section, because to treat it as a clear, just strict interpretation of the law just leads to an absurd result. What's your best case in support of your position? We don't have a case. I believe this is an issue of first impression to the Court, Your Honor. I would answer the agency ruled on it. The agency? The BIA. The BIA basically affirmed the immigration. Do they have a published, considered opinion either way on this issue? They pretty much, even though it was not a without an opinion decision, they just basically affirmed the judge's plain interpretation of the statute. Judge Hawkins is asking if there's a case other than this particular case that has been decided by the BIA that's published. I'm sorry. Not that I'm aware of. Thank you for clarification. I don't believe I have anything more to say. If you have a little bit of time left for rebuttal, we'll hear from the Attorney General at this point. Mr. Beyer? Good morning. My name is Jason Forrest. Brian Beyer on behalf of the Attorney General at this time. Let me start out by saying that I'm not aware either of any BIA precedent decision addressing the issue of the applicability of Section 101B1F in the context of cancellation of removal. This feeds into my point that just as in the prior case, the issue is not exhausted here and is not properly before the court for the court to consider. The issues that were presented by Mr. Moreno-Morante on his appeal to the BIA were, first, that the legal guardianship sufficed to make his grandchildren qualifying relatives. The second was that the grandchildren should be deemed qualifying relatives similar to children. And those were the two submissions to the BIA. You argued that the children were qualifying relatives. Yes. Is there any other section of the INA other than 1101 that anyone could look to to determine what a qualifying relative is? Well, Your Honor. Is there a yes or no? Yes, there is. Okay. And the reason is that qualifying relatives is actually not a term within the statute. You look to the cancellation of removal statute, and that identifies what the qualifying relatives are, spouses, parents, child, of the alien. And then in order to determine child, then you look at the Section 101 definition of child. And one of the provisions of that states that if a child is a person under 21 who is adopted before the age of 16. That didn't happen here. 101, as my colleague explained, the provision that refers to orphans refers to alien children who are being adopted by U.S. citizen parents or parents-to-be. And it does not pertain to the circumstance where the child is a U.S. citizen and the person seeking to adopt them is an alien. Did the IJ in this case have any trouble determining what the argument was? I don't believe so, Your Honor. I mean, it was. The IJ, in other words, understood that they were arguing that these children either fit the definition of child or orphan, right? Well, Your Honor, the issue. That's what the argument was. No, Your Honor. I understand you don't agree with the argument. But the IJ understood that, didn't he? No, Your Honor. The issue of orphan was not raised until it came to this Court. I'm asking you what was raised as a technical matter. I'm asking you if it's clear from the record, as in the last case, whether the IJ understood what the argument was. Is there any doubt about that? The IJ understood that Mr. Moreno-Morante was taking the position that his grandchildren should be viewed as qualifying relatives for the reasons that I've identified. And to be a qualifying relative, you had to be a child, right? That's correct. That's correct. You have to be the alien's child. So he had the issue before him. Yes. His reasoning was that until Mr. Moreno-Morante was able to successfully adopt these children, he was not their parent. And because he wasn't their parent, they weren't his child. You know, I think it's kind of dancing on pinheads to suggest that these arguments weren't really before the lower court. If they were, maybe we'll just remand and have them look at it. Well, Your Honor, there's no error in the board's decision here. Well, that may be. But your idea that we can't look at all these arguments is a little bit disturbing to me. Well, Your Honor, Mr. Moreno-Morante had an attorney, and he presented the arguments and he was entitled to present this argument as well. And one of the principles of exhaustion was that he was entitled to present the argument maybe not artfully, but that it was there. Well, Your Honor, it's not clear from the record that that's the case. Our position is that he did not do so. And then on the merits of this case, this is controlled by Hector, which says that the definition of child for purposes of cancellation of removal is something that Congress has paid very close attention to and has addressed in detail. And it's the Court's responsibility to follow the plain language of the statute. And in Hector, the Court specifically rejected the proposition that there should be some sort of functional analysis of the actual relationship between the cancellation or suspension applicant and the minor who is claimed to be a child. In Hector, it was the niece. And it was so clear that the Supreme Court summarily disposed of a case where the court of appeals had actually adopted a functional approach and said that the BIA erred in considering or in failing to consider the nieces, the hardships of the nieces of the alien's removal. Of course, we have this guardianship. Does that make any difference in our case? No, Your Honor. It doesn't, because the plain meaning of the statute controls. I mean, Congress has spelled out the terms. And the issue whether a guardianship as opposed to an adoption makes a difference is something that Congress has not recognized. And the BIA was not even given an opportunity to address it. In fact, I might add that the arguments about the fact, the nature of the custodial arrangement under California law and what that really means also was not presented to the immigration judge or to the Board of Immigration Appeals. The arguments before the immigration judge, after the Department of Homeland Security declined to agree to an administrative closure, was that his relationship should functionally be treated as establishing a qualified relative status without any more elaboration of what the specific terms were under California law. The immigration judge addressed that by saying, you know, if you are not a parent, then they're not your qualifying relatives. Okay.  Rebuttal, counsel? Thank you. The issue was exhausted. This is not a situation like Barron v. Ashcroft, where an entirely new claim was presented. Here, we're not presenting a new claim of asylum. We're not presenting a new claim of due process. We're just merely elaborating an issue already presented, and that is, how do we define child in this particular case? Did you bring up the statute 1101b1f before the immigration judge? Before the immigration judge, Your Honor, I can't recall, but what I can recall is that that was precisely the issue, whether or not a qualifying relative, and in this case we had his grandchildren, the only logical term that would qualify was children or the definition of child. Did you bring up this orphan statute at all? No, I did not. I did not. Did you do it before the BIA? I did not. I did not. Now, in terms of Section 101b, subsection f, I'm just not convinced that Congress really intended to include or protect foreign orphans, but not U.S. citizen orphans. Specifically, when we're looking at it in the context of cancellation of removal, where, again, the statute is meant to as a remedy for the foreign person, but really to protect the interest and welfare of the relative members of that nonresident, U.S. citizens and residents. So it doesn't make any sense that Congress just clearly did not intend to include that U.S. citizen orphans. With respects to Hector, clearly that case, we don't disagree with it, but it doesn't apply in this case. First, because that case dealt with suspension of deportation. We're talking about cancellation. But more importantly, there was a close resemblance to a parent-child relationship in that case. In this case, we have full legal parental guardianship issued by the State of California. That has to have a meaning. And what the government is basically asking this Court to do is to flatly ignore it, as it doesn't exist. It doesn't apply. If we read the plain language, that means permanent legal guardianship has absolutely no value. And I don't think Congress really intended to do that. That's all I have for rebuttal. Roberts. Thank you for your argument, counsel. Thank both sides for their arguments. The case just targeted will be submitted.
judges: B. Fletcher, Siler , Hawkins